NOT DESIGNATED FOR PUBLICATION

No. 87,379

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
CECIL W. EMERSON.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; PAUL W. CLARK, ROBB W. RUMSEY, judges. Opinion filed August 19, 2022. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant/cross-appellee.

*Dwight R. Carswell*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee/cross-appellant.

Before SCHROEDER, P.J., BRUNS and WARNER, JJ.

WARNER, J.: In 2000, Cecil Emerson was involuntarily committed for treatment under the Sexually Violent Predator Act (SVPA). Emerson appealed his commitment, but his appeal was dismissed when his attorney failed to file a brief. In 2019, Emerson filed a motion to recall the appellate mandate and reinstate his appeal. This court granted the motion and remanded the case to the district court for a hearing to determine whether Emerson's trial counsel provided ineffective assistance of counsel, as Emerson asserted. The district court found Emerson's trial attorney was ineffective for failing to file a motion to dismiss, but the court did not grant any relief, finding such a ruling would be beyond the scope of this court's remand.

1

With the evidentiary hearing concluded, Emerson's direct appeal of his involuntary commitment is now again before this court. Emerson challenges the district court's jurisdiction to commit him to the Sexually Violent Predator Treatment Program over 20 years ago. He also challenges the jury instructions and the sufficiency of the evidence at his commitment trial. And he claims his attorney provided constitutionally deficient representation during the commitment proceedings. The State has cross-appealed, challenging the district court's conclusion after the recent evidentiary hearing that Emerson's trial counsel was ineffective.

After carefully reviewing the record, the relevant statutes and caselaw, and the parties' arguments, we affirm Emerson's commitment.

FACTUAL AND PROCEDURAL BACKGROUND

In August 1999, the State initiated proceedings to involuntarily commit Emerson under the SVPA. The State's request was based, in part, on Emerson's 1975 out-of-state conviction for lascivious acts with a child, his 1981 Kansas conviction for indecent liberties with a child, and his 1990 Kansas conviction for sexual exploitation of a child. The 1975 and 1981 convictions each involved 9-year-old girls, and the 1990 conviction involved a 15-year-old girl. In September 1999, Emerson waived his right to a probable-cause hearing, and the trial court ordered an evaluation at Larned State Hospital.

The case proceeded to a jury trial in October 2000. The State presented two expert witnesses—Rex Rosenberg, a psychologist, and Dr. Jose Bulatao, a psychiatrist—who, after examining Emerson at Larned, diagnosed him with pedophilia and exhibitionism. Emerson presented Dr. William Logan, a psychiatrist who testified that Emerson suffered from borderline personality disorder but did not currently meet the criteria for a pedophilia diagnosis. At the close of the trial, the jury found that Emerson met the statutory requirements for involuntary commitment.

After various posttrial motions, Emerson filed a timely notice of appeal in February 2001. This appeal was docketed with the Kansas Court of Appeals. Emerson's trial attorney, Michael Lehr, was appointed to represent him on appeal. But despite multiple extensions from the Court of Appeals, Lehr did not file an appellate brief. Due to this failure, Emerson's appeal was involuntarily dismissed in August 2002, and the mandate was issued in late September. Lehr voluntarily surrendered his law license several years later. See *In re Lehr*, 281 Kan. 842, 842-43, 133 P.3d 1279 (2006).

When Emerson's case was adjudicated, the SVPA required a court to hold a trial within 60 days of the probable-cause hearing. K.S.A. 1999 Supp. 59-29a06. The Kansas Court of Appeals had previously held—before Emerson's adjudication—that this 60-day requirement was jurisdictional. See *In re Care & Treatment of Brown*, 26 Kan. App. 2d 117, 120, 978 P.2d 300 (1999). The Kansas Supreme Court adopted that interpretation one month before Emerson's appeal was dismissed. See *In re Care & Treatment of Searcy*, 274 Kan. 130, 144, 49 P.3d 1 (2002); *In re Care & Treatment of Blackmore*, 30 Kan. App. 2d 90, 95-96, 39 P.3d 89 (2002).

In early September 2002, Emerson filed a pro se motion to vacate his judgment and dismiss his case, as well as a motion for appointment of counsel. Citing *Brown*, *Blackmore*, and *Searcy*, Emerson argued the trial court lacked jurisdiction once 60 days passed after he waived the probable-cause hearing. He also briefly stated Lehr provided ineffective assistance by not raising the jurisdictional issue. The record does not indicate whether these motions were ever addressed by the district court.

In 2003, the Kansas Legislature amended the SVPA to emphasize the 60-day requirement was not jurisdictional. See K.S.A. 2003 Supp. 59-29a01 (any time requirements, either as originally enacted or as amended, are meant to be directory, not mandatory); K.S.A. 2003 Supp. 59-29a06(e) (provisions of this section are not jurisdictional); see also K.S.A. 2021 Supp. 59-29a06(a) (requiring court to schedule

3

pretrial conference within 60 days of probable-cause hearing so parties can agree upon trial date).

Once a person has been committed under the SVPA, the Act requires an annual examination of the patient's mental condition to determine whether a change in that condition warrants a patient's release. K.S.A. 2021 Supp. 59-29a08(a). That determination is reviewed by a district court. K.S.A. 2021 Supp. 59-29a08(b), (f). A patient may challenge the examination's conclusion and is entitled to representation at the court's annual review hearing. K.S.A. 2021 Supp. 59-29a08(e).

In May 2009, Emerson filed a second pro se motion to vacate his judgment, alleging Lehr provided ineffective assistance by not representing him at these annual reviews. Emerson also filed an accompanying motion for appointment of counsel. The district court summarily denied the 2009 motion, and Emerson did not appeal.

In July 2014, Emerson, represented by new counsel, filed a motion requesting the district court permit him to file an out-of-time appeal under *State v. Ortiz*, 230 Kan. 733, 735-36, 640 P.2d 1255 (1982) (district court may grant out-of-time appeal if criminal defendant's attorney fails to perfect and complete an appeal). The district court held a hearing on the motion. Emerson testified that he learned Lehr was no longer representing him in 2003 and that Lehr was disbarred in 2006, but Emerson did not try to determine the state of his appeal because he became depressed. He stated that he first learned about his appeal's dismissal from his new attorney a few months before this 2014 hearing. The district court ultimately granted Emerson's motion to reinitiate his direct appeal.

Back before the Court of Appeals, Emerson challenged the district court's jurisdiction, various jury instructions, the admission of an expert report, and the sufficiency of the evidence at his trial. *In re Care & Treatment of Emerson*, 52 Kan. App. 2d 421, 429, 431, 436, 369 P.3d 327 (2016), *appeal dismissed* 306 Kan. 30, 392 P.3d 82

4

(2017). The *Emerson* panel found it had jurisdiction over his appeal but rejected his arguments on the merits. 52 Kan. App. 2d at 424-28, 439. The Kansas Supreme Court granted Emerson's petition for review, but it later dismissed the appeal for lack of jurisdiction. 306 Kan. at 39. The Supreme Court found that the district court lacked jurisdiction to grant an out-of-time appeal because jurisdiction transferred to the Court of Appeals when Emerson filed and docketed his 2001 appeal. 306 Kan. at 34-36. To pursue that direct appeal, Emerson had to file a motion with the Court of Appeals to recall the mandate dismissing the appeal. 306 Kan. at 39.

In February 2019, Emerson did just that—he filed a motion to recall the mandate and, in May 2019, sought to reinstate his original direct appeal. Over the State's objections, the Court of Appeals granted both motions. Then, in October 2019, Emerson filed an amended motion seeking remand to the district court for a hearing on whether Lehr provided ineffective assistance by not filing a motion to dismiss when the trial was held more than 60 days after he had waived the probable-cause hearing. The Court of Appeals granted the motion for that purpose but retained jurisdiction over the appeal after the hearing.

On remand, the State challenged Emerson's claim of ineffective assistance of counsel on equitable grounds. It asserted that the district court should decline to consider the ineffective-assistance claim due to the length of time that had passed, that Emerson waived his right to raise the ineffective-assistance claim and acquiesced in the judgment by not challenging his annual reviews or appealing his 2009 motion, and that collateral estoppel barred readjudicating the claim since it had been previously raised. But at the hearing in December 2019, the court declined to consider these arguments because the case was remanded solely for an evidentiary hearing on Emerson's claim. At that hearing, Emerson stated that he informed Lehr about the 60-day jurisdictional issue, but Lehr responded it did not apply. Lehr testified that he was unfamiliar with this argument, did not recall reading *Brown*—the Court of Appeals case from 1999 discussing the

jurisdictional issue—and did not remember talking about the case with Emerson. Lehr stated that if he had been aware of the case, he would have filed a motion to dismiss the adjudication against Emerson.

The district court ultimately adopted Emerson's proposed findings of fact and conclusions of law, finding that Lehr had provided ineffective assistance by not filing a motion to dismiss and, but for that error, the adjudication's outcome would have been different. Emerson subsequently filed a motion requesting his release and dismissal of his adjudication, but the district court denied the motion as dismissal would exceed the scope of this court's remand order. Emerson again appealed, adding his challenge to the district court's denial of Emerson's release to his other trial claims. The State cross-appealed the district court's ineffective-assistance ruling.

DISCUSSION

The appeal now before this court raises several issues concerning various phases of this lengthy litigation.

Emerson challenges the district court's initial jurisdiction to consider the adjudication, arguing that the waiver of his probable-cause hearing in 1999 should have triggered the 60-day window to bring his case to trial. He argues that he should receive the benefit of the law that was in effect at the time of his adjudication, which found the 60-day window to be jurisdictional, not the later legislative clarification indicating that it was not. He also argues that the district court erred when it recently denied his request for release based on the ineffective assistance of Lehr in failing to request dismissal on jurisdictional grounds. Alternatively, Emerson challenges several aspects of the trial itself, challenging the jury instructions, the admission of an expert report, and the sufficiency of the evidence at trial.

In its cross-appeal, the State argues that this court erred in withdrawing the mandate and asserts Emerson's claims are barred by waiver and laches. It also asserts that claim and issue preclusion prevent Emerson from relitigating his ineffective-assistance claim since he raised that claim in an earlier motion to the district court. And the State challenges the district court's recent finding that Lehr provided constitutionally defective assistance.

For the reasons we explain more fully below, we do not find the State's procedural and equitable arguments persuasive. Instead, we proceed to the merits of Emerson's claims. Considering first Emerson's jurisdictional challenges, we conclude—as multiple other panels have previously—that the 2003 legislative clarifications are controlling, and the district court thus had jurisdiction to consider Emerson's adjudication. In light of this conclusion, we find that Emerson cannot show any prejudice resulted from Lehr's failure to request dismissal on those grounds. And Emerson has not apprised us of any error in his 2000 trial. We thus affirm his commitment under the SVPA.

1. *The State's procedural and equitable arguments are unpersuasive.*

As a preliminary matter, the State argues that there are several procedural and equitable reasons why we need not consider the merits of Emerson's appeal. It asserts that, given the time that has passed since Emerson's trial in 2000 and the dismissal of his direct appeal in 2002, this court should reconsider its decision recalling the mandate and allowing the appeal to go forward. Alternatively, the State argues that we should decline to consider Emerson's appeal based on the equitable doctrines of laches and waiver. And the State asserts that we should decline to consider Emerson's jurisdictional claims based on principles of claim and issue preclusion, as those arguments were—or, in the case of his ineffective-assistance claim, could have been—raised in a previous motion to the district court in 2009. Given the unique facts of this case, we do not find these arguments convincing.

An appellate court has the power to recall, correct, amplify, or modify its own mandate, which it may exercise in its discretion. *Sperry v. McKune*, 305 Kan. 469, 478-79, 384 P.3d 1003 (2016); see also *West v. Insurance Co.*, 105 Kan. 414, 415-16, 185 P. 12 (1919) (permitting recall of mandate "as justice may require"). Here, the district court concluded that Emerson's appeal had been dismissed due to Lehr's failure to file a brief—not on the merits and not based on anything in Emerson's control. See *Emerson*, 52 Kan. App. 2d at 427-28. The Kansas Supreme Court recognized the fairness of this argument but found that only the Court of Appeals, not the district court, had the power to reinstate the appeal. *Emerson*, 306 Kan. at 39. Almost two years later, this court granted Emerson's request to recall the mandate and reinstate his direct appeal.

The State argues that this two-year delay was unreasonable. The State thus urges this court to reconsider withdrawing the mandate and to dismiss Emerson's appeal. While we appreciate the force of the State's argument, particularly in light of the short timeframes for filing notices of appeal, we find that the unique facts and circuitous procedural history of this case warrant our continued review. We thus retain Emerson's appeal.

The State also argues the equitable doctrines of waiver and laches weigh against considering the merits of Emerson's appeal. Waiver involves the voluntary and intentional relinquishment of a known right. *Chelf v. State*, 46 Kan. App. 2d 522, 533, 263 P.3d 852 (2011). The intent to abandon a right—whether by action or inaction—must be expressed in an unequivocal manner. 46 Kan. App. 2d at 533; see also *Lyons v. Holder*, 38 Kan. App. 2d 131, 138, 163 P.3d 343 (2007) (knowledge and intent are essential elements). Laches prevents litigation of stale claims. *Gillespie v. Seymour*, 250 Kan. 123, 134, 823 P.2d 782 (1991). It applies when a party's unreasonable and unexplained delay in bringing a claim, along with other circumstances, prejudices the other party. 250 Kan. at 134.

Following his involuntary commitment under the SVPA, Emerson received annual examinations to determine whether he continued to require treatment and commitment. Each year from 2001 on, an examiner concluded Emerson's mental condition did not warrant his release. And each year, Emerson either signed an acknowledgment form informing him of his right to challenge that determination in court, signed the form and indicated he waived his right, or refused to sign the form. The only year when Emerson petitioned for his release was 2018.

Because Emerson waived his right to petition for his release in most years, the State argues he has also waived his right to appeal his overall commitment. Relatedly, the State asserts that laches warrants the dismissal of Emerson's claim since over 20 years have passed since the original commitment proceeding.

Again, we are not persuaded by these arguments. Emerson has not waived his appeal by waiving his right to petition for his release following his annual examinations; those examinations are distinct from his original commitment proceeding. And the State has not shown that by waiving his annual right to petition for his release, Emerson knew he was also waiving his direct appeal. See *Harder v. Foster*, 54 Kan. App. 2d 444, 460, 401 P.3d 1032 (2017) (burden of proof rests with party raising affirmative defense).

Nor has the State demonstrated that the delay in this case warrants dismissal based on laches. Since he learned in 2014 that his direct appeal had been dismissed, Emerson has continually sought to reinstate his appeal. While we acknowledge the substantial length of time between the present appeal and Emerson's trial, the unique facts of this case warrant our continued review.

In its last procedural challenge, the State argues that this court should decline to consider Emerson's jurisdictional argument and his related claim of ineffective assistance of counsel based on principles of issue and claim preclusion. In particular, the State

9

points to Emerson's 2009 motion where he previously asserted Lehr's ineffective assistance and asserts that he should not be permitted to relitigate that issue here.

There are two reasons why we do not find that these preclusive principles apply. *First*, it is not clear from the record whether the district court denied Emerson's 2009 motion on the merits of his claim for ineffective assistance of counsel, or whether it denied that motion based on the State's procedural arguments. See *In re Tax Appeal of Fleet*, 293 Kan. 768, 778, 272 P.3d 583 (2012) (issue preclusion can only apply when an issue is "determined and necessary to support the judgment"). *Second*, and more importantly for this appeal, issue preclusion and claim preclusion are prudential considerations that may lead a court to decline to consider an argument or claim, not absolute procedural bars to review. See *Herington v. City of Wichita*, 314 Kan. 447, 458-59, 500 P.3d 1168 (2021). Both issue preclusion and claim preclusion require a "'case-by-case analysis that moves beyond a rigid and technical application to consider the fundamental purposes of the rule[s] in light of the real substance of the case at hand.'" 314 Kan. at 459.

Applying these considerations here, we believe that the posture and procedural history of this case warrant consideration of Emerson's claims regarding the district court's jurisdiction and the effectiveness of his trial counsel. We turn now to the merits of those claims.

2. *The district court had jurisdiction over the original commitment proceeding.*

The parties' central arguments in this appeal concern whether the district court lost jurisdiction over Emerson's SVPA adjudication when his case was not brought to trial within 60 days after he waived his probable-cause hearing. Emerson urges this court to dismiss the jury's verdict, arguing that the law in effect at the time of his adjudication, not current law, should control the district court's power to hear his case. Alternatively, he

asserts that his trial attorney, Lehr, was ineffective for not seeking dismissal of his SVPA case, as such an argument would have been successful at the time of his trial. For its part, the State argues that the district court erred when it found after Emerson's most recent evidentiary hearing that Lehr had provided constitutionally defective representation that changed the outcome of Emerson's trial.

Our review of these arguments is colored somewhat by the significant passage of time between Emerson's original adjudication and this appeal. But after carefully reviewing the law and the parties' arguments, we agree with the other panels of this court that have found the subsequent legislative clarifications to K.S.A. 59-29a06, not the law in effect in 1999, control our analysis in this appeal. Thus, Emerson cannot show that the district court lost jurisdiction to consider his case, nor can he demonstrate that he was prejudiced by Lehr's failure to move to dismiss on that ground.

2.1.    *The 2003 statutory clarifications to K.S.A. 59-29a06 apply to Emerson's case and clarify that the 60-day timeframe is not jurisdictional.*

We first consider Emerson's claim that the district court lost jurisdiction over Emerson's SVPA case when his trial was not held within 60 days after he waived his probable-cause hearing. This argument turns primarily on which version of K.S.A. 59-29a06 governs Emerson's case—the version in effect in 1999 or the present statute. Appellate courts exercise unlimited review when interpreting statutes. *Norris v. Kansas Employment Security Bd. of Review*, 303 Kan. 834, 837, 367 P.3d 1252 (2016).

During Emerson's adjudication, the SVPA generally required a trial to be held within 60 days after the probable-cause hearing. K.S.A. 1999 Supp. 59-29a06. Shortly before the State initiated commitment proceedings against Emerson, the Kansas Court of Appeals held that this requirement was "mandatory and jurisdictional"—in other words, failure to bring a case to trial within 60 days of the probable-cause hearing resulted in dismissal of the case. *Brown*, 26 Kan. App. 2d at 120.

11

Emerson's initial appeal was dismissed in 2002. Shortly before this dismissal, the Kansas Supreme Court and the Court of Appeals reaffirmed *Brown*'s holding. *Searcy*, 274 Kan. at 144; *Blackmore*, 30 Kan. App. 2d at 95-96. Like Emerson's case, *Searcy* applied the 60-day timeframe to a waiver of a probable-cause hearing, not merely the date of the hearing itself.

In 2003, the Kansas Legislature amended the SVPA to clarify that the 60-day timeframe was intended to be directory, not mandatory. See K.S.A. 2003 Supp. 59-29a01 (any time requirements, either as originally enacted or as amended, are meant to be directory, not mandatory); K.S.A. 2003 Supp. 59-29a06(e) (provisions of this section are not jurisdictional). Shortly after these amendments went into effect, this court found that "[b]ecause the 60-day time limit . . . is directory and not mandatory, the failure to bring a candidate for sexually violent predator status to trial within 60 days of the determination of probable cause does not divest the district court of subject matter jurisdiction in any properly commenced proceeding." *In re Care & Treatment of Hunt*, 32 Kan. App. 2d 344, Syl. ¶ 6, 82 P.3d 861, *rev. denied* 278 Kan. 845 (2004). The *Hunt* court also held that these amendments were retroactive, and retroactive application of these provisions did not violate the committed person's due-process rights. 32 Kan. App. 2d 344, Syl. ¶ 6.

The legislature has since amended K.S.A. 59-29a06 again, replacing the nonjurisdictional 60-day trial requirement with a 60-day pretrial conference requirement. See K.S.A. 2021 Supp. 59-29a06(a), (f). K.S.A. 2021 Supp. 59-29a01(b) continues to state:

> "Notwithstanding any other evidence of legislative intent, it is hereby declared that any time requirements set forth in K.S.A. 59-29a01 et seq., and amendments thereto, either as originally enacted or as amended, are intended to be directory and not mandatory and serve as guidelines for conducting proceedings under K.S.A. 59-29a01 et seq., and amendments thereto."

12

We applied these statutes to Emerson's case in 2016 and concluded that the statutory clarifications—not the statute that was in effect when Emerson was initially adjudicated—governed his appeal. *Emerson*, 52 Kan. App. 2d at 429-31. To reach this conclusion, we cited S*tate v. Thomas*, 283 Kan. 796, 805, 156 P.3d 1261 (2007), which generally holds that the law in effect at the time a district court grants a late appeal controls the appeal. See *Emerson*, 52 Kan. App. 2d at 430-31.

Emerson's appeal was later dismissed for lack of jurisdiction, and this court's decision evaluating his jurisdictional argument was vacated. But although we are not bound by the panel's decision in that case, we find its reasoning sound.

In *Thomas*, the Kansas Supreme Court rejected the argument that the law in effect when an appeal should have been filed applies to an appeal taken out of time. *Thomas*, 283 Kan. at 803-05. The *Thomas* court reasoned that because judicial decisions alter the legal landscape, a contrary conclusion would leave courts to speculate whether a subsequent change in the law would apply to a specific appeal. 283 Kan. at 804-05. To avoid this guesswork, the court held the law in effect when an out-of-time appeal is granted controls. 283 Kan. at 805.

Though Emerson's SVPA is a civil case, the parallels to *Thomas* are noteworthy. Similar to *Thomas*, Emerson seeks to litigate his direct appeal several years after it was dismissed. As the Supreme Court recognized in *Thomas*, a contrary rule would lead to speculation as to when Emerson's appeal might have concluded and what law would have been in effect at that time. Indeed, the State raises that question here, arguing the 2003 amendments may have taken effect before Emerson's appeal became final. Thus, Emerson's appeal "is subject to the law in effect at the time of its granting rather than the law in effect when" his appeal was originally pending. 283 Kan. at 805.

13

Emerson's motions to recall the mandate and reinstate the appeal were granted in March and May 2019, respectively. Under *Thomas*, the version of the SVPA in effect at that time applies. And under K.S.A. 2018 Supp. 59-29a01(b) (which is identical to K.S.A. 2021 Supp. 59-29a01[b]), the 60-day window in K.S.A. 2018 Supp. 59-29a06(a)—which sets a timeframe for a pretrial conference, not a trial—is directory and does not affect the court's jurisdiction to otherwise consider an SVPA adjudication. Thus, the fact that more than 60 days passed between Emerson's waiver of his probable-cause hearing and his trial did not divest the court of jurisdiction over his case.

2.2. *Because the current statutory clarification applies to Emerson's case, he has not shown any prejudice from Lehr's failure to request dismissal on jurisdictional grounds.*

Emerson argues that even if the district court did not lose its jurisdiction over his SVPA case when it was not brought to trial within 60 days, his trial attorney nevertheless provided constitutionally deficient representation when he failed to move to dismiss the case based on the law in effect at that time. The district court agreed with this assessment but concluded it could not provide Emerson any relief based on the narrow ruling of this court's mandate. We need not opine on the district court's interpretation of our mandate because we disagree with the court's evaluation of Emerson's claim for ineffective assistance of counsel.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI; *State v. Cheatham*, 296 Kan. 417, Syl. ¶ 2, 292 P.3d 318 (2013). The Kansas Supreme Court has similarly found that a person has a constitutional right to effective assistance of counsel during an SVPA commitment proceeding. *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 22-25, 287 P.3d 855 (2012). To show ineffective assistance of counsel, a person must demonstrate (1) his or her attorney's performance fell below an objective standard of reasonableness under all the circumstances, and (2) this deficient performance caused

prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland*).

Courts assess the deficiency of an attorney's performance based on the law applicable at the time of representation. See *State v. Singleton*, 33 Kan. App. 2d 478, 487, 104 P.3d 424 (2005). But hindsight has the potential to color this review. To avoid this, courts must determine the surrounding circumstances and assess the challenged conduct based on the attorney's perspective. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018). A strong presumption exists that an attorney's actions were not deficient. *State v. Coones*, 301 Kan. 64, Syl. ¶ 3, 339 P.3d 375 (2014). In the prejudice assessment, the person challenging an attorney's actions must show that there is a reasonable probability the outcome would have been different but for the attorney's deficient performance. *Moncla v. State*, 285 Kan. 826, Syl. ¶ 3, 176 P.3d 954 (2008).

When a district court rules on a claim of ineffective assistance of counsel after an evidentiary hearing, appellate courts review the court's factual findings for substantial competent evidence and its ultimate conclusions de novo. *Cheatham*, 296 Kan. at 430.

With these principles as background, we turn first to Emerson's claim that Lehr provided a constitutionally defective performance when he did not move to dismiss Emerson's case after 60 days had elapsed since he waived his probable-cause hearing. When Emerson's SVPA case was pending, this court had recently ruled in *Brown* that the 60-day timeframe was jurisdictional.

It is true, as the State points out, that success on any motion to dismiss was not a foregone conclusion. While *Brown* involved dismissal after a probable-cause hearing, Emerson waived his hearing. It was unclear at the time whether a waiver of that hearing also resulted in a waiver of that timeframe—an argument that was not clarified until the

15

Kansas Supreme Court's decision in *Searcy* in 2002. It was similarly unclear whether a dismissal under K.S.A. 1999 Supp. 59-29a06 would have allowed the State to refile the case. See K.S.A. 2000 Supp. 60-241(b)(1) (involuntary dismissal for lack of jurisdiction is not an adjudication on the merits). That question would later be clarified as well. See *In re Care & Treatment of Johnson*, 32 Kan. App. 2d 525, 530-32, 85 P.3d 1252 (dismissed SVPA for lack of jurisdiction may be refiled if person is returned to State's custody for violating postrelease supervision), *rev. denied* 278 Kan. 845 (2004). But these issues remained unresolved during Emerson's adjudication.

At the same time, the district court correctly observed that Lehr could have made a strong argument in a motion to dismiss that the court lacked jurisdiction under *Brown*. And during the 2019 evidentiary hearing, Lehr indicated that he was unaware of *Brown* or of the 60-day dismissal rule when he represented Emerson. Based on this evidence, we presume—rather than decide—that Lehr's representation fell below an objective standard of reasonableness.

This does not end our inquiry, however. Instead, we must determine whether there is a reasonable probability the failure to file a motion to dismiss changed the outcome of Emerson's case. We conclude it did not.

Emerson argues that Lehr's failure to file a motion to dismiss under *Brown* prevented the district court from dismissing his SVPA case on that basis. He asserts that because the reasonableness of an attorney's representation is measured at the time that representation occurred, this court should conduct its prejudice analysis through that same lens. The State asserts that prejudice should be measured against the current legal landscape.

The Kansas Supreme Court considered a similar question in *Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003), and *State v. Harris*, 310 Kan. 1026, 453 P.3d 1172

16

(2019). At the time *Ferguson* was decided and the crime in *Harris* was committed, challenges to criminal complaints were reviewed under a bifurcated standard, depending on when the challenge arose. See 310 Kan. at 1045-46 (explaining the standard adopted in *State v. Hall*, 246 Kan. 728, 793 P.2d 737 [1990], *overruled by State v. Dunn*, 304 Kan. 773, Syl. ¶ 4, 375 P.3d 332 [2016]). When a defendant raised the issue within 14 days after trial, the "pre-*Hall*" standard applied, and a charging document that lacked an essential element of a charged crime was viewed as "'jurisdictionally and fatally defective,'" resulting in a reversal of the conviction. *Harris*, 310 Kan. at 1043. But when someone challenged a complaint for the first time on appeal, the "post-*Hall*" standard governed, and the charging document was reviewed under a more lenient "'common-sense rule'" that was significantly less likely to lead to reversal. 310 Kan. at 1043. (Kansas courts have since overruled this dichotomy in favor of a more straightforward analysis. See *Dunn*, 304 Kan. 773, Syl. ¶ 2.)

*Ferguson* and *Harris* raised the question as to which of these two standards—the more rigorous pre-*Hall* rule or the more flexible post-*Hall* standard—governed the prejudice assessment in claims that trial counsel provided ineffective assistance by failing to move for an arrest of judgment within 14 days after the close of trial. In both cases, the Kansas Supreme Court held that the later, more lenient standard applied. As the *Harris* court explained:

> "[*Ferguson*] recognized *Hall*'s bifurcated review standard can create an absurd situation depending on how the argument was framed. This is because when a defendant challenged a charging document's insufficiency for the first time on appeal, the post-*Hall* standard applied. But if the defendant altered the argument to be an ineffective-assistance-of-counsel claim in the same situation, the court would be forced under *Strickland* to hold the alleged deficient performance was prejudicial when failing to move to arrest judgment if there was any defect under the pre-*Hall* standard. *Ferguson*, 276 Kan. at 430. The *Ferguson* court resolved this anomaly by applying the common-sense rule to analyzing the prejudicial effect of trial counsel's failure to move to vacate in

17

a collateral attack based on ineffective assistance of counsel. 276 Kan. at 444; see also *Swenson v. State*, 284 Kan. 931, Syl. ¶ 4, 169 P.3d 298 (2007) (common-sense rule is used to analyze the prejudice prong in the test for ineffective assistance of counsel related to failure to file a motion to dismiss or vacate the judgment when alleging a defective complaint)." *Harris*, 310 Kan. at 1045-46.

This analysis applies with equal force to Emerson's claim. As the court recognized in *Ferguson* and *Harris*, Emerson's position would have this court apply the current standard to Emerson's direct appeal but the previous *Brown* standard in the court's prejudice assessment of his ineffective-assistance claim. This would lead to the untenable position of recognizing, on the one hand, that the timing of Emerson's trial did not divest the district court of jurisdiction, but holding, on the other, that failure to object to that same timing necessitates reversal. The law is not so finicky.

The better rule, and the rule based on Kansas Supreme Court precedent, is to analyze the effect of Lehr's failure to file a motion to dismiss under the same legal principles that govern Emerson's jurisdictional challenge in his direct appeal. Applying this standard here, Emerson has not shown that the absence of such a motion changed the outcome of his trial, as the 60-day window was not a jurisdictional time-bar. And even if the case against Emerson had been dismissed on that previous basis, the State was free to refile the SVPA case against him. See *Johnson*, 32 Kan. App. 2d at 530-32.

In short, even presuming that Lehr's failure to file a motion to dismiss was constitutionally deficient representation, Emerson has not shown a reasonable probability that this omission changed the outcome of the trial against him.

The district court thus erred when it found Emerson had succeeded on his claim for ineffective assistance of counsel. But because the court did not enter any relief based on that erroneous judgment, citing the narrow scope of the appellate mandate, this error was harmless and does not require reversal.

18

3. *Emerson has not demonstrated any error in his 2000 trial.*

Emerson also raises several challenges to his SVPA trial. He claims the district court erred in providing instructions concerning two of Emerson's mental diagnoses. He also challenges the admissibility of the State's expert report. And he asserts the evidence at trial was insufficient to lead to his involuntary commitment under the SVPA. After reviewing these claims, we find that Emerson has not apprised us of any error and affirm the jury's verdict.

3.1. *The jury instructions were not clearly erroneous.*

Emerson argues the district court erred by instructing the jury that two of Emerson's mental diagnoses constituted "mental abnormalities." He asserts that these instructions, to which Emerson did not object, diminished the State's burden of proof.

In an SVPA commitment proceeding, the State must prove four elements beyond a reasonable doubt:

> "(1) the individual has been convicted of or charged with a sexually violent offense, (2) the individual suffers from a mental abnormality or personality disorder, (3) the individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder, and (4) the individual has serious difficulty controlling his or her dangerous behavior." *In re Care & Treatment of Williams*, 292 Kan. 96, 106, 253 P.3d 327 (2011).

See also K.S.A. 2021 Supp. 59-29a02(a) (defining "sexually violent predator"); K.S.A. 2021 Supp. 59-29a07(a) (requiring proof beyond a reasonable doubt). A "mental abnormality" refers to a condition that predisposes a person to commit sexually violent offenses. See K.S.A. 2021 Supp. 59-29a02(b).

19

In its instructions, the trial court provided the statutory definition of "mental abnormality" but also stated that pedophilia and exhibitionism are generally recognized mental abnormalities. Likewise, the court gave its own definition of "personality disorder" and explained that borderline personality disorder is a generally recognized personality disorder. Emerson did not object to the inclusion of these specific diagnoses. Later, during closing arguments, Emerson's attorney stated he was not arguing that Emerson did not have a mental abnormality; rather, he emphasized that Emerson was unlikely to repeat his previous sexual offenses.

When a party fails to object to a jury instruction, appellate courts review the instruction for clear error. See K.S.A. 2021 Supp. 22-3414(3). This review entails two steps. *In re Care & Treatment of Thomas*, 301 Kan. 841, 846, 348 P.3d 576 (2015). First, appellate courts apply an unlimited standard of review to determine whether the instruction was legally or factually inappropriate. 301 Kan. at 348. An instruction that shifts the burden of proof is legally inappropriate. See *State v. Johnson*, 233 Kan. 981, Syl. ¶ 1, 666 P.2d 706 (1983). Second, an erroneous instruction requires reversal if an appellate court is firmly convinced the error affected the verdict. *Thomas*, 301 Kan. at 846.

The previous *Emerson* panel found that Emerson had waived his challenge to these jury instructions when his counsel conceded that pedophilia and exhibitionism were mental abnormalities under Kansas law. 52 Kan. App. 2d at 433. And it found that even if the instructions were erroneous, Emerson had not demonstrated clear error because the evidence at trial supported the finding that pedophilia and exhibitionism are mental abnormalities. 52 Kan. App. 2d at 433-35. We find this analysis persuasive and adopt the panel's reasoning on these points.

All the experts at Emerson's trial agreed that the DSM-IV—the Diagnostic and Statistical Manual of Mental Disorders—is used to make psychological diagnoses.

Relying on the criteria in the DSM-IV, the State's experts diagnosed Emerson with pedophilia and exhibitionism. And even if neither expert explicitly stated that these disorders were mental abnormalities under the SVPA, by describing their diagnoses, they suggested that Emerson suffered from a mental abnormality. See *State v. McClelland*, 301 Kan. 815, 820, 347 P.3d 211 (2015) (jury may make reasonable inferences from presented evidence). Moreover, these diagnoses did not address the other elements required for an SVPA commitment—conviction of a sexually violent offense, the likelihood of repeat acts, and a person's ability to control their behavior. The jury would have understood the diagnoses to relate to a mental abnormality or personality disorder.

The district court's inclusion of Emerson's diagnoses of pedophilia and exhibitionism in the jury instruction defining mental abnormality was not clear error.

3.2. *Emerson has not demonstrated any error in the admission of the State's expert report.*

During his adjudication, the district court admitted the report of the State's expert witnesses over Emerson's hearsay objection. Emerson now argues the court abused its discretion in doing so. But because that report is not included in the record, this court cannot adequately review this claim.

Appellate courts review hearsay objections to the admissibility of evidence for an abuse of discretion. *In re Care & Treatment of Quary*, 50 Kan. App. 2d 296, 300, 324 P.3d 331, *rev. denied* 300 Kan. 1103 (2014). But to meaningfully make that determination, the appellate record must contain the contested evidence. And Emerson, as the party claiming error, bears the burden of designating a record that shows error. See *State v. McCullough*, 293 Kan. 970, 999, 270 P.3d 1142 (2012).

Emerson did not include the expert report in the appellate record. The *Emerson* panel declined to address the issue due to this omission, and other panels have declined to

review evidentiary claims that are similarly not supported by the record. *Emerson*, 52 Kan. App. 2d at 436; see *In re Care & Treatment of Sweet*, No. 110,991, 2014 WL 5313611, at *1 (Kan. App. 2014) (unpublished opinion) (declining to review admission of expert reports when reports were not contained in appellate record); *In re Care & Treatment of Blevins*, No. 87,178, 2001 WL 37132551, at *1 (Kan. App. 2001) (unpublished opinion).

Because the appellate record does not contain the report, this court lacks sufficient grounds to determine whether the trial court abused its discretion. Thus, Emerson has not demonstrated any error in the report's admission.

3.3. *Sufficient evidence supports the jury's verdict.*

Last, Emerson challenges the sufficiency of the evidence supporting his involuntary commitment under the SVPA. Emerson argues that the State failed to prove two elements required for commitment—that he suffered from a mental abnormality and that he would likely engage in repeat acts of sexual violence based on an abnormality. See *Williams*, 292 Kan. at 106. Our review of the record shows that there was evidence supporting each of these elements.

An appellate court reviews the sufficiency of the evidence to determine whether it is convinced a reasonable fact-finder, viewing the evidence in a light most favorable to the State, could find beyond a reasonable doubt that a person meets the SVPA criteria. Appellate courts do not reweigh the evidence, resolve evidentiary conflicts, or reassess witnesses' credibility. 292 Kan. at 104.

As we have indicated, the State presented evidence that Emerson suffered from a mental abnormality. The State also offered evidence to show Emerson's likelihood to reoffend based on a mental abnormality. One of the State's experts, Rosenberg, noted

Emerson's multiple prior pedophilia diagnoses and his convictions involving minors. While interviewing Emerson, Rosenberg believed Emerson was defensive in answering questions—such as referring to the prior victims as "young women"—which suggested either a lack of insight into how his mind works or a deliberate attempt to appear more well-adjusted. Based on Emerson's history, which included his continued interest in children, Rosenberg indicated that he believed Emerson was likely to commit sexually violent acts. The State's other expert, Dr. Bulatao, made a similar finding.

Emerson correctly points out that the defense expert, Dr. Logan, provided a different assessment. But the jury's verdict demonstrates that it credited the State's evidence. And this court does not reweigh the evidence.

The State presented sufficient evidence that Emerson suffered from a mental abnormality and that he posed a risk to reoffend due to that abnormality.

In summary, the timing of Emerson's trial—which occurred more than 60 days after he waived his probable-cause hearing—did not divest the district court of jurisdiction in his SVPA case. Nor has Emerson apprised us of any error at his trial that requires reversal. We therefore affirm Emerson's involuntary commitment under the SVPA. For the reasons we have explained in this opinion, the district court erred when it found that Emerson's trial counsel's defective representation changed the outcome of the trial. But because the court denied Emerson's request for relief based on that assessment, the court's intermediate ineffective-assistance ruling does not require reversal.

Affirmed.